## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

KIRK A. RANKIN                                                    PLAINTIFF

V.                                No. 3:20-CV-261-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                 DEFENDANT

## ORDER

### I.      Introduction

Plaintiff, Kirk A. Rankin ("Rankin"), applied for disability income benefits and supplemental security income benefits on September 11, 2018, alleging disability beginning on June 30, 2017. (Tr. at 17). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his applications on January 10, 2020. (Tr. at 29). The Appeals Council denied his request for review on August 10, 2020 (Tr. at 1), making the ALJ's denial of Rankin's application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.     The Commissioner's Decision

The ALJ found that Rankin had not engaged in substantial gainful activity

since the alleged onset date of June 30, 2017.[3] (Tr. at 19). The ALJ found, at Step

Two, that Rankin had the following severe impairments: bilateral osteoarthritis of

the knees, right leg length discrepancy, obesity, anxiety disorder, and depressive

disorder. *Id*.

After finding that Rankin's impairments did not meet or equal a listed

impairment (Tr. at 20), the ALJ determined that Rankin had the residual functional

capacity ("RFC") to perform work at the light exertional level, with additional

limitations: (1) He could no more than occasionally reach overhead and no more

than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl;

(2) He could nor more than occasionally operate foot controls; (3) He is limited to

unskilled work with incidental contact with supervisors and coworkers; and (4) He

could have no contact with the general public. (Tr. at 22).

The ALJ determined that Rankin was unable to perform any of his past

relevant work. (Tr. at 27). Relying upon Vocational Expert ("VE") testimony, the

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

ALJ found that, based on Rankin's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, including positions as price marker, cleaner (housekeeping), ampoule sealer, and table worker. (Tr. at 28). Thus, the ALJ concluded that Rankin was not disabled. *Id.*

### III.   Discussion

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'"

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.   Rankin's Arguments on Appeal

Rankin contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ erred in his evaluation of medical opinions, and that she did not properly consider Rankin's subjective complaints. He further contends that the ALJ erred at Steps Three and Five. The Court finds support for Rankin's first argument.

Rankin suffered from anxiety and depressive disorder. He testified that he was fired several times for lashing out at employees and customers. (Tr. at 80–86). He said he lacked motivation, had racing thoughts, toxic rage, could not focus, and could not tend to personal care. (Tr. at 80–85, 1136–1137, 1440). He had mood swings and

panic attacks on a daily basis. (Tr. at 1430). Insomnia and side effects from medication presented problems too. (Tr. at 83–85, 1037, 1122).

Rankin alleges that the ALJ improperly discounted medical opinions from three of his treating mental health providers (there were 8 medical opinions from Rankin's providers in total).[4] These three mental health providers were Ken Pruett, APN, DeShon Scott, LPC, and Brittany Killain, MSN, APRN. They treated Rankin regularly at Mid-South Health Systems, a mental health facility, in 2018, 2019, and 2020 for ongoing anxiety and mood lability issues. (Tr. at 1356–1453, 1477–1573). In March 2018, Mr. Pruett documented Rankin's long-term inability to maintain employment, as well as his long-term anger issues. (Tr. at 1383–1386). Mr. Scott's notes from August 2018 showed that Rankin had flipped out on his dad, hitting himself in the head and punching walls. (Tr. at 1122). Rankin said he felt out of control. *Id*. In October 2018, Rankin appeared anxious and disheveled and wanted to "hurt someone." (Tr. at 1136–1137). While Mr. Scott observed that Rankin

---

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1)–(2) (2017). *See Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id.*

experienced slight improvement in January 2019, by the next month, he reported to Ms. Killain that he was depressed and irritable again. (Tr. at 1436). He lacked motivation at an appointment in April 2019, and Ms. Killian referred to his toxic rage in her note. (Tr. at 1440). Rankin endorsed racing thoughts and distractibility. (Tr. at 1123). He said that medication did not help with symptoms. (Tr. at 83–85).

Mr. Pruett filled out a medical source statement in August 2018. (Tr. at 1036–1039). The ALJ stated that it was less than persuasive because it was not a valid medical opinion and did not contain any mental health restrictions in functioning. (Tr. at 25). This is wrong. Mr. Pruett explained in detail that Rankin would regularly miss work, would need unscheduled breaks, could not respond appropriately to supervisor criticism, and would have problems getting along with coworkers, could not interact with the public, and could not handle production quotas, among other things. *Id*. All of those statements reflect specific functional restrictions, the kind that an ALJ proposes to a VE as part of his RFC inquiry.

In the same way, the ALJ discounted multiple medical source statements from Mr. Scott, ranging in time from July 2018 through November 2019 (Mr. Scott also submitted an opinion after the hearing).[5]  (Tr. at 6–7, 1039–1041, 1455, 1579–1580).

---

[5] In support of her decision to discount the treating provider medical opinions, the ALJ pointed to a one-time consultative examination in 2019, wherein the examiner did not find many functional limitations, although Rankin presented as disheveled and glum, with poor eye contact. (Tr. at 1166–1177).

The ALJ again said that the opinions were less than persuasive because they did not contain functional restrictions, but in the sentence right before that, the ALJ listed out the specific functional restrictions assessed by Mr. Scott, like regular absences from work, inability to accept instructions, and trouble interacting with others. (Tr. at 25). The ALJ's evaluation of Mr. Scott's statements is internally inconsistent and doesn't make sense, and therefore, it doesn't withstand security.

The ALJ did the same thing with Ms. Killain's opinions from December 2018 and April 2019, which stated that Rankin would have problems getting along with others, was easily distracted, and could not respond appropriately to criticism, among other things. (Tr. at 1042, 1163). The ALJ again said there were no functional restrictions in the opinions, which is not true.[6]

Because the ALJ erred in his evaluation and discussion of the treating provider medical opinions, reversal is required.

## IV.   Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

---

[6] The Court notes that, in his brief, Defendant barely touched on the issue of the ALJ's evaluation of medical opinions: in one sentence, Defendant simply states that all of the opinions were on medical source forms, and that they were conclusory. (Doc. No. 14 at 10).

784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ's discussion of the medical opinions was inconsistent and inaccurate.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review, including a proper analysis of the medical opinions.

DATED this 21st day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE